Association of Pennsylvania State College and University Faculties, Petitioner *v.* Caryl M. Kline, Secretary of Education of the Commonwealth of Pennsylvania, Respondent.

Argued December 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judges MENCER and PALLADINO did not participate.

*Jerome H. Gerber* with him *Elliot A. Strokoff, Handler and Gerber, P.C.,* for petitioner.

*David H. Allshouse,* Deputy Attorney General, with him *Norman J. Watkins* and *Allen C. Warshaw,* Deputy Attorney Generals, and *Harvey Bartle, III,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, April 1, 1981:

This case comes before us on cross motions for summary judgment on a motion filed by the Association of Pennsylvania State College and University Faculties (APSCUF) to confirm an arbitration award against the Commonwealth and the Secretary of Education, the respondents here.

The original motion to confirm the arbitration award in question was first filed on June 2, 1978, and then amended in response to the respondents' preliminary objections. Additional preliminary objections were argued before this Court in March of 1979, and at that time we overruled a challenge to our jurisdiction and a demurrer to the amended motion. *Association of Pennsylvania State College and University Faculties v. Commonwealth,* 44 Pa. Commonwealth Ct. 193, 403 A.2d 1031 (1979). An answer, new matter and reply to new matter were thereafter filed and the parties then stipulated to numerous facts and made the mutual motions for summary judgment which are now before us.

The arbitration award here concerned, which resulted after APSCUF and the Commonwealth failed to negotiate an agreement as to a salary increase for faculty members for the 1977-78 school year, was issued in March of 1978 and directed that the faculty members represented by APSCUF be given a 4.5% wage increase retroactively effective to August 31, 1977. The Commonwealth did not appeal this award,

but it has refused nevertheless to implement the pay increases applicable to the period from September 1, 1977 through June 30, 1978.[1]

APSCUF argues that the Commonwealth's failure to appeal the award requires that it be confirmed.[2]

The Commonwealth's response, and the issue before us, is that this arbitration award was merely advisory under Section 804 of the Public Employe Relations Act (Act 195),[3] and that the Commonwealth was not bound by the award for the 1977-78 school year.

Under the provisions of Section 804 of Act 195, parties who voluntarily submit to binding arbitration are bound by the resulting award "with the proviso [that] the decisions of the arbitrator which would require legislative enactment to be effective shall be considered advisory only."

The respondents argue that the arbitration award was advisory from its inception because the legislature has exclusive authority to appropriate funds for the support of educational programs. They contend that this award could not be effective without legislative enactment of an appropriation bill to cover the increase in teachers' salaries here concerned and that no such appropriation was ever made. They also contend that, even if the award could have been binding without legislative approval, it was advisory in this case due to the General Assembly's prospective refusal to grant any increase in teachers' salaries which was

---

[1] As of July 1, 1978, the salary increases were effectuated and this suit concerns only those wages which were not paid from the period of September 1, 1977 through June 30, 1978.

[2] Upon confirmation of the arbitration award, APSCUF hopes to seek execution on Commonwealth assets in order to pay the back wages.

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.804.

expressed in specific prohibitions contained in the General Appropriations Act of 1977, Act of August 20, 1977, P.L. 411 (Act 11-A). We believe, however, that Section 804 of Act 195 mandated that this arbitration award be binding upon the parties until such time as the General Assembly would consider and reject it, which it has not yet done.

Our Supreme Court interpreted an identical proviso in the next following Section of Act 195 (Section 805), 43 P.S. §1101.805, to mean that an award does not become advisory until "it is *demonstrated* (emphasis in original) by the public employer that the lawmaking body has *met, considered and rejected* (emphasis added) an arbitration award concerning financial items.\.." *Franklin County Prison Board v. Pennsylvania Labor Relations Board*, Pa. , , 417 A.2d 1138, 1144 (1980). There, the Pennsylvania Labor Relations Board (PLRB) had found that the public employer had committed an unfair labor practice because it had not implemented arbitrated salary increases. The public employer argued that the award was advisory because the salaries could not be raised without a "legislative enactment" on the part of the Franklin County Salary Board, which had the responsibility for setting salaries and compensation for prison guards. The Court affirmed the PLRB decision, holding that the Salary Board's function of fixing salaries was administrative in nature, not legislative, and that the public employer was bound by the award until such time as the county commissioners, in the exercise of their legislative responsibility for appropriating funds and levying taxes, considered and rejected the award. We believe that the situation before us is closely analogous. The executive branch of the Commonwealth had the administrative responsibility here for setting salaries and it was bound by the arbitration award to which it was a party until such

award was considered and rejected by the General Assembly in the exercise of its authority to enact appropriations.[4]

Moreover, were we to accept the respondents' argument that this award was not binding on the parties until such time, if ever, as the General Assembly specifically appropriated funds therefor, we would, in effect, be declaring that all arbitration awards calling for an increase in compensation or benefits are automatically advisory. This would be an absurd conclusion, for, if the parties in an arbitration are not bound by the resolution of financial disputes achieved thereby, then the value of arbitration as a tool in solving conflicts in labor relations would be effectively emasculated.

We must conclude, therefore, that the award herein was binding upon the respondents unless it was specifically repudiated by the General Assembly and we can find no record of any such repudiation here.

Even were we to endorse the respondents' contention that it is possible for the General Assembly to repudiate an award *prospectively* and thus render it advisory before it is even made, we cannot say that Act 11-A effectively achieved such a result. The pertinent paragraphs of Act 11-A, Act of August 20, 1977, P.L. 411 at 420, provide:

> The funds appropriated herein for the operation, maintenance, and administration of the State colleges and university are not sufficient to provide for any negotiated compensation encreases after the effective date of this act [August 20, 1977], therefore no funds ap-

---

[4] It is significant to note that APSCUF is only seeking to confirm an arbitration award against the respondents and they do not seek an order compelling the payment of money. The award only sets the rate of salaries and does not in itself force the Commonwealth to levy additional taxes.

propriated herein shall be used for such negotiated compensation increases.

....

No funds received from any other source by the State colleges and university shall be used for negotiated compensation increases....

This language prohibits the use of funds for *"negotiated* compensation increases", but what we have before us here are salary increases resulting from arbitration awards. We believe that a clear distinction exists between an arbitrated compensation increase and one that is negotiated. More importantly, our Supreme Court has stated that statutes which restrict collective bargaining rights bar only those rights with which the statutes *explicitly and definitively* conflict, *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), and, although that case dealt with a section of Act 195 which does not concern us here,[5] we believe that we must also construe the language of Act 11-A narrowly so that it applies only to negotiated, not to arbitrated, salary increases.[6]

---

[5] That case dealt with the interpretation of Section 703 of Act 195, 43 P.S. §1101.703, which prohibits parties, in the course of collective bargaining, from implementing any provisions that conflict with any laws or statutes of the Commonwealth or its home-rule municipalities.

[6] We must also note that the provision of Act 11-A declaring that "[n]o funds received from any other source by the State colleges and university shall be used for negotiated compensation increases ..." may very well violate Article III Section 11 of the Pennsylvania Constitution which states in pertinent part: "The general appropriation bill shall embrace *nothing but appropriations* for the executive, legislative and judicial departments of the Commonwealth, for the public debt and for public schools." (Emphasis added.) This clause of Act 11-A evidences an attempt to legislate a restriction on employees' rights to bargain for higher wages and the restriction was meant to apply to funds which were not included in the instant appropriation bill. As such we believe that such

The arbitration award will therefore be confirmed.[7]

ORDER

AND, Now, this 1st day of April, 1981, the petitioner's motion for a summary judgment in the above-captioned matter is granted and the arbitration award rendered on March 24, 1978, is hereby confirmed.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.

language may amount to an unconstitutional "rider" bill. *Compare Biles v. Department of Public Welfare*, 44 Pa. Commonwealth Ct. 274, 403 A.2d 1341 (1979) (wherein this Court upheld limitational language in an appropriation bill which restricted the use of only the funds appropriated *therein*).

[7] A party who has not filed a timely motion to vacate, modify or correct an arbitration award, as was the case here, may not collaterally attack the merits of the award in a subsequent confirmation petition. *See Pennsylvania Labor Relations Board v. Commonwealth*, 478 Pa. 582, 387 A.2d 475 (1978); *Emporium Area Joint School Authority v. Anundson Construction and Building Supply Co.*, 402 Pa. 81, 166 A.2d 269 (1960).